HAYSLIP *v.* WELLFORD *et al.*

(*Nashville,* December Term, 1952.)

Opinion filed July 17, 1953.

Petition for Certiorari denied by the
United States Supreme Court December 7, 1953.

SAMUEL F. COLE and J. E. MADDEN, both of Memphis, for plaintiff in error.

EMMETT W. BRADEN, THOMAS R. PREWITT, RICHARD H. ALLEN, W. PRESTON BATTLE, (with ARMSTRONG, McCADDEN, ALLEN, BRADEN & GOODMAN), all of Memphis, McDONALD, KUHN & McDONALD, and ROSENFIELD, BOROD, FONES & BOGATIN, all of Memphis, of counsel, for defendants in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This was a civil action brought by the plaintiff in error against the defendants, members of the Shelby County Grand Jury for libel. The Grand Jurors, who are the defendants in error, had made a certain investigation and as a result of this investigation filed a report thereof with the criminal judge of Shelby County out of whose court they were working. As a result of this report being filed the plaintiff in error filed a motion to expunge certain portions of the report. The trial judge denied this motion and on appeal, *Hayslip* v. *State,* 193 Tenn. 643,

249 S. W. (2d) 882, certiorari denied by the United States Supreme Court, *Hayslip* v. *Report of Grand Jury of Shelby County,* 344 U. S. 879, 73 S. Ct. 176, 97 L. Ed. 681, this Court held that the matter of expunging the questioned report was a matter for the discretion of the trial court and thus denied the motion to expunge.

After the declaration was filed in the instant cause the defendants filed a demurrer which was subsequently amended as well as the declaration and this demurrer was sustained by the trial court. The plaintiff in error has seasonably and duly perfected her appeal.

The essential portions of the alleged libelous statements sued on are quoted in the opinion of *Hayslip* v. *State,* supra. The demurrer pleads an absolute privilege. It is based upon the assertion that the defendants, acting officially as a grand jury, presented the document in question containing the objectionable language to the court; that as a result of the official investigation by the Grand Jury into the charges that this amounted to an official, judicial or semi-judicial act on their part; that this being true such act was privileged and the Grand Jurors were not liable civilly for the action that they took thereunder. In this investigation by the Grand Jury the plaintiff had appeared and been sworn as a witness.

Various assignments of error have been made. Principally these assignments contend that the defendants, as Grand Jurors, acted without legal authority in presenting or reporting such matters as they did in this particular to the court, reflecting unfavorably upon the plaintiff, without indicting her or resulting in her indictment. It is argued that such action, being without authority of law, was not a judicial act, and, therefore, the statements involved therein are not entitled to the absolute privilege accorded by law to pertinent state-

624

ments made in the course of judicial proceedings, and the defendants are not immune from civil liability for their publication. This of course presents the determinative issue in the lawsuit. There are other questions raised such as the right of free speech on behalf of the plaintiff under. the State and Federal Constitutions. Const. art. 1, Sec. 19; Const. U. S. Amend. 1. As we view the matter though these questions are not necessary for decision because the question on the right of privilege is absolutely determinative of the lawsuit.

■ In *Hayslip* v. *State,* supra, we reviewed, to some extent, the duties of a Grand Jury in this State. As a result of this it will not be necessary for us now to again review the matter. We think that in view of the duties of the Grand Jury in this State as pointed out in *Hayslip* v. *State,* supra, that it naturally follows that they are entitled to the same legal privileges and immunities with respect to their judicial acts as is the judge of the court of which they are a part. This is the holding of many courts. See *Turpen* v. *Booth,* 56 Cal. 65, 38 Am. Rep. 48; *Phelps* v. *Dawson,* 8 Cir., 97 F. (2d) 339, 116 A. L. R. 1343; *Griffith* v. *Slinkard,* 146 Ind. 117, 44 N. E. 1001; *O'Regan* v. *Schermerhorn,* 1946, 50 A. (2d) 10, 25 N. J. Misc. 1.

■ It is well settled in all jurisdictions, insofar as we know, that statements made in the course of judicial procedures, relevant and pertinent to the matter involved, are absolutely privileged and cannot form the basis for libel action. This is true irrespective of whether the statements are made maliciously and corruptly. *Dyer* v. *Dyer,* 178 Tenn. 234, 156 S. W. (2d) 445; *Independent Life Ins. Co.* v. *Rodgers,* 165 Tenn. 447, 55 S. W. (2d) 767; *Crockett* v. *McLanahan,* 109 Tenn. 517, 72 S. W. 950, 61 L. R. A. 914; *Webb* v. *Fisher,* 109 Tenn.

701, 72 S. W. 110, 60 L. R. A. 791; note found in 20 A. L. R. 407. And see host of cases cited in *O'Regan* v. *Schermerhorn,* supra, at page 21 of 50 A. (2d).

The reasoning of the courts of this State and of other courts behind the rule exempting public officials from the liability in libel actions made in judicial proceedings is stated thus:

"The fact that cases of hardship may arise, and persons who have been defamed in the course of judicial proceedings may be left remediless, is no reason why a wholesome legal principle, founded upon reasons of public policy, should be overthrown. A multitude of instances might be cited where the rights of the individual are required to be sacrificed for the public good." *Crockett* v. *McLanahan,* 109 Tenn. 517, 72 S. W. 950, 953.

And:

"In the imperfection of human nature it is better even that an individual should suffer a wrong than that the general courts of justice should be impeded and fettered by constant and perpetual restraints and apprehensions on the part of those who administer it." *Webb* v. *Fisher,* supra [109 Tenn. 701, 72 S. W. 112].

And again in the Webb case this very pertinent quotation is found:

" 'There is another class of cases which are absolutely privileged and depend in no respect for their protection upon their bona fides. The occasion is an absolute privilege, and the only questions are whether the occasion existed, and whether the matter complained of was pertinent to the occasion. In this class are embraced judicial proceedings. The proceedings connected with the judicature of the country

are so important to the public good, the law holds that nothing which may be therein said with probable cause, whether with or without malice, can be slander, and, in like manner that nothing written with probable cause under the sanction of such an occasion can be a libel.' ''

It is the act, the judicial character thereof and not the individual that makes it a public necessity that public agents or officials in the performance of their public duties should not suffer for performing their judicial acts even though they err therein.

In *Hayslip* v. *State,* supra, we held that the Grand Jurors had jurisdiction to undertake an investigation of the matter thus called to their attention. They were required by the very nature of the charges before them to decide whether it called for the exercise of their inquisitorial powers and this was in effect a judicial act, so far at least as the inception of the jurisdiction is concerned, and therefore entitled the defendants to all the privileges and immunities surrounding such acts even if the defendants did make the mistake and with the sanction of the trial judge of filing a report which is here complained of.

Of course the Grand Jury, as we have indicated, had the authority to investigate, to hear the matter, then it would seem to us that it naturally follows, in the absence of clear legal restrictions to the contrary, that the defendants had the further authority to reach a conclusion with respect thereto—the right to determine the course to be pursued with respect to the disclosures resulting from such investigation. It seems that this would be a judicial act, which, if erroneously exercised, would be an error of judgment and would not detract from the judicial character of the act.

It seems to us that even though the document questioned was neither a presentment nor indictment that the Grand Jury's findings or conclusions would be entitled to the protection of privilege just the same as if this finding had been an indictment or a presentment, because in composing and presenting this report to the court the jurors were performing judicial acts in a judicial proceeding. *Mundy* v. *McDonald,* 216 Mich. 444, 185 N. W. 877, 20 A. L. R. 398, with annotation at page 407.

This case i. e., *Mundy* v. *McDonald,* supra, presents a very interesting illustration of where under the statutes of Michigan the Circuit Judge was composed and acted as a Grand Jury and made an investigation in his official capacity of the acts of a mayor of a town. After his investigation he made a report and spread it on the minutes severely condemning the acts of this mayor. There was no indictment or presentment as a result of this one-man grand jury investigation and consequently the mayor sued the judge in a civil action for damages as is being done in the instant case. The Michigan court held that even though there was no indictment or presentment that this was an official act of the judge and as such he was entitled to absolute privilege when he acted as a grand jury.

It seems plain to us that the decision of the Grand Jury to proceed in the manner and to the extent to which they did was properly a judicial act or at least the act had colorable jurisdiction and any error in deciding it was an error of judgment on a question of law for which these Grand Jurors are not civilly liable, and that the statements, made in the course thereof, being relevant and pertinent to the subject matter of the investigation, *Hayslip* v. *State,* supra, are absolutely privileged. "To hold otherwise, in view of the allegations of this pleading,

would be equivalent to saying that grand jurors who serve by compulsion of law and not by their own volition, must decide doubtful questions concerning their jurisdiction at their peril, upon which questions even the courts have been unable to agree.'' *O'Regan* v. *Schermerhorn, supra,* at page 26, 50 A. (2d).

This freedom of action granted to those acting in a judicial capacity is given not for the sake of the individual but for the sake of the public whom they serve, and for the advancement of justice, because the officer or the person thus serving must be free from civil liability so that he may be free in thought and independent in judgment as to all with whom he comes in contact so that in this way he may administer justice as it ought to be.

For the reasons expressed the judgment below must be affirmed.

PREWITT, Justice, not participating.

NEIL, Chief Justice (concurring).

While I still dissent from the majority opinion in *Hayslip* v. *State,* 193 Tenn. 643, 249 S. W. (2d) 882, I join with the majority of the Court in affirming the judgment of the trial court in the instant case.

For reasons stated in my dissent, I felt that the learned trial judge committed a grievous error in ordering spread upon the court's minutes the report of the grand jury which was defamatory of Mrs. Hayslip. She had appeared and testified before the grand jury as a witness upon a matter with which the grand jury had full authority to deal, but no indictment was returned against her. Whether the court was right or wrong the filing of the report and acceptance by the trial judge and later spread upon the minutes of the court was a judicial act. It reflected the opinion and final judgment of the court

in a matter which was properly before him for decision and action.

I therefore feel that the majority opinion holding that the report was absolutely privileged is supported by the weight of authority and that the majority opinion is correct.